**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

Criminal Action No. 1:16-cr-00341-CMA

UNITED STATES OF AMERICA,

      Plaintiff,

              v.

DAVID MICHAEL ANSBERRY,

      Defendant.

---

**SUPPLEMENTAL MEMORANDUM OF THE UNITED STATES IN AID OF
SENTENCING**

---

    The United States of America, through undersigned counsel, respectfully submits

this supplemental memorandum in aid of the sentencing of defendant David Ansberry.

## INTRODUCTION

    On November 1, 2016, defendant David Ansberry was charged by indictment

with the use and attempted use of a weapon of mass destruction in violation of 18

U.S.C. § 2332a(a)(2) for placing a destructive device in front of the Nederland Police

Department station on October 11, 2016. On July 18, 2017, defendant pled guilty to the

indictment without a plea agreement. On March 30, 2018, the Probation Office filed its

Presentence Report, recommending a sentence of 360 months incarceration followed

by five years of supervised release. The Probation Office determined that this case

involved a federal crime of terrorism and therefore, the terrorism enhancement

described in USSC § 3A1.4 should apply. As a result of the application of the terrorism

1

enhancement, the defendant's total offense level is 36 and his criminal history category is VI.

On October 31 and November 1, 2018, the Court took testimony from witnesses at the defendant's sentencing hearing. At the conclusion of the testimony, the Court heard arguments from counsel concerning objections to the Presentence Report. Before imposing sentence, the Court instructed both parties to submit simultaneous supplemental briefing addressing the issue of the burden of proof to be applied to the evidence presented in the sentencing hearing and the application of the terrorism enhancement to this case. The United States therefore submits this memorandum in response to the Court's instruction.

## I.   THE LAW REGARDING THE BURDEN OF PROOF REQUIRED AT SENTENCING

The standard of proof applicable to sentencing is unquestionably "preponderance of the evidence," a lower evidentiary standard than "beyond a reasonable doubt," which the defense argued to the Court on November 1, 2018 should be considered. In United States v. Watts, 519 U.S. 148 (1997) (per curiam), the Court recognized that preponderance of the evidence is the standard of proof that governs sentencing. The Court reasoned that 18 U.S.C. § 3661 "codifies the longstanding principle that sentencing courts have broad discretion to consider various kinds of information."   Id. at 151. This discretion is recognized in section 1B1.4 of the Sentencing Guidelines, which states:

> In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background,

2

character and conduct of the defendant, unless otherwise prohibited by law.

Citing section 6A1.3 of the Sentencing Guidelines, the Court in Watts further observed that it is appropriate that facts relevant to sentencing be proven by a preponderance of the evidence, a standard recognized to generally satisfy due process. 519 U.S. at 156 (citing McMillan v. Pennsylvania, 477 U.S. 79, 91-92 (1986)). Significantly, the Court also confirmed that "sentencing enhancements do not punish a defendant for crimes of which he was not convicted, but rather increase his sentence because of the manner in which he committed his crime of conviction."  519 U.S. at 154 (citing Witte v. United States, 515 U.S. 389, 402-03 (1995)). The sentencing court may therefore receive all information relevant to the defendant's conduct in considering the application of enhancements, understanding that the defendant is "punished only for the fact that the *present* offense was carried out in a manner that warrants increased punishment."  519 U.S. at 155 (emphasis in original) (quoting Witte v. United States, 515 U.S. at 403). This analysis fully supports the conclusion that the proper standard of proof for the court to apply to information submitted at sentencing is preponderance of the evidence.

The Tenth Circuit has repeatedly recognized that sentencing facts need only be proven by a preponderance of the evidence, even where an enhancement is at stake. See United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008); United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001); United States v. Valdez, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000); United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993) ("the issue of a higher than a preponderance standard is foreclosed in

this circuit")[1]; <u>United States v. Boyd</u>, 901 F.2d 842, 845 (10th Cir. 1990); <u>see also</u>

<u>United States v. Schmidt,</u> 353 Fed. Appx. 132, 135 (10th Cir. 2009) (unpublished)

(district court's determination of "relevant conduct" pursuant to section 1B1.3(a)(1) of

the Sentencing Guidelines is a factual finding subject to a preponderance of the

evidence standard); <u>United States v. Zapata,</u> 546 F.3d 1179, 1192 (10th Cir. 2008)

(determination of drug quantity is a factual finding that must be supported by a

preponderance of the evidence); <u>United States v. Kirk,</u> 894 F2d 1162 (10th Cir. 1990);

<u>accord</u> <u>United States v. Hendrickson,</u> 592 Fed. Appx. 699, 705 (10th Cir. 2014)

(unpublished) (holding that, after <u>Alleyne v. United States,</u> 570 U.S. 99 (2013), "[i]t is

well-established that sentencing factors need not be charged in an indictment and need

only be proved to the sentencing judge by a preponderance of the evidence").

Appellate courts give due deference to a sentencing judge's application of the

Sentencing Guidelines to the facts and review factual determinations for clear error.

<u>United States v. Coleman,</u> 947 F.2d 1424, 1426 (10th Cir. 1991); <u>Boyd</u>, 901 F.2d at

845; <u>United States v. Rutter,</u> 897 F.2d 1558, 1560 (10th Cir. 1990); <u>accord</u> <u>United</u>

<u>States v. Haley,</u> 529 F.3d 1308, 1311 (10th Cir. 2008) ("We review sentences for

reasonableness under a deferential abuse of discretion standard."). The Circuit has

---

[1.] Although at least one Tenth Circuit decision after <u>Washington</u> left open "the possibility that due process may require proof by clear and convincing evidence before imposition of a [Sentencing] Guidelines enhancement that increases a sentence by an 'extraordinary or dramatic' amount," <u>United States v. Ray,</u> 704 F.3d 1307, 1314 (10th Cir. 2013), the Circuit "has not yet found that an 'extraordinary or dramatic' instance warrants a higher standard of proof for certain facts that enhance a defendant's sentence." <u>United States v. Folse,</u> 301 F. Supp.3d 1037, 1056 n.9 (D.N.M. 2017) (citing <u>Olsen,</u> 519 F.3d at 1105).

explained,

> A sentence is procedurally unreasonable if the district court incorrectly calculates or fails to calculate the Guidelines sentence, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, relies on clearly erroneous facts, or inadequately explains the sentence. A sentence is substantively unreasonable if its length is unreasonable in light of the sentencing factors set forth in § 3553(a).

Id. Moreover, in order for the reviewing court to conclude that a factual finding is clearly erroneous, "the finding must be 'simply not plausible or permissible in light of the entire record on appeal.'"   Zapata, 546 F.3d at 1192 (quoting United States v. Morales, 108 F.3d 1213, 1225 (10th Cir. 1997)). As the Supreme Court has observed, a factual finding is not clearly erroneous unless "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."   Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 400 (1990).

## II.   APPLICATION OF THE TERRORISM ENHANCEMENT PURSUANT TO U.S.S.G. § 3A1.4

Section 3A1.4 of the Sentencing Guidelines states that if the felony involved or was intended to promote a federal crime of terrorism, the base offense level is increased to level 32 and the defendant's criminal history category is calculated to be Category VI. A "federal crime of terrorism" has the same definition as is included in 18 U.S.C. §   2332b(g)(5). Section 2332b(g)(5) defines the term as an offense "that is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct," and is a violation of certain enumerated federal statutes, including 18 U.S.C. 2332a, the offense to which defendant Ansberry

has pled guilty.

In order for the sentencing court to apply the terrorism enhancement, the government must establish, by preponderance of the evidence, not only that defendant Ansberry committed a covered offense, but also that his actions were calculated to influence or affect the conduct of government or to retaliate against government conduct. See United States v. Wright, 747 F.3d 399, 407 (6th Cir. 2014); accord United States v. Dowell, 430 F.3d 1100, 1110 (10th Cir.), cert. denied, 549 U.S. 828 (2006). While the Tenth Circuit has not analyzed the meaning of the phrase, "calculated to influence or affect the conduct of government,"[2] other circuits have interpreted it to require proof of specific intent. Id. at 408; United States v. Hassan, 742 F.3d 104, 148-49 (4th Cir. 2014); United States v. Siddiqui, 699 F.3d 690, 709 (2d Cir. 2012); see also United States v. Christianson, 586 F.3d 532, 539-40 (7th Cir. 2009) (court considers defendant's "purpose" or "motive" in committing offense). The Sixth and Second Circuits have stated that a defendant has the requisite state of mind if he or she acted with the purpose of influencing or affecting government conduct and planned his or her actions with this objective in mind. Wright, 747 F.3d at 408; Siddiqui, 699 F.3d at 709. Influencing the government need not be the defendant's sole aim or purpose. United States v. Stafford, 782 F.3d 786, 792 (6th Cir. 2015) (quoting Wright, 747 F.3d at 408); United States v. Jayyousi, 657 F.3d 1085, 1114-15 (11th Cir. 2011); United States v. Awan, 607 F.3d 306, 317 (2d Cir. 2010). As the Awan court observed,

---

[2.] In Dowell, the court considered the issue briefly, deferring to the jury's determination that the defendant had interfered with the IRS "knowingly and intentionally," as required by 26 U.S.C. § 7212(a). 430 F.3d at 1110.

> Section 2332b(g)(5)(A) does not require proof of a defendant's particular motive. 'Motive' is concerned with the rationale for an actor's particular conduct….'Calculation' is concerned with the object that the actor seeks to achieve through planning or contrivance…Section 2332b(g)(5) (A) does not focus on the defendant but on his 'offense,' asking whether it was calculated, i.e., planned – for whatever reason or motive – to achieve the stated object.

607 F.3d at 317.

Specific intent can be established even if direct evidence of the defendant's particular frame of mind is not in the record. In United States v. Dye, 538 Fed. Appx. 654 (6th Cir. 2013), the district court's application of the enhancement was upheld. The sentencing court had concluded that the defendant's offense, firebombing the office of a judge's bailiff, supported the "natural inference" that the defendant had the requisite intent. Id. at 666. The Ninth, Second and Eleventh Circuits have upheld the application of the terrorism enhancement for defendants who sought to bomb or otherwise violently target government facilities. See United States v. McDavid, 396 Fed. Appx. 365 (9th Cir. 2010); In re Terrorist Bombings of U.S. Embassies in E. Africa, 552 F.3d 93 (2d Cir. 2008); United States v. Mandhai, 375 F.3d 1243 (11th Cir. 2004); see also United States v. Abu Katallah, 314 F. Supp.3d 179, 198 (D.D.C. 2018) (specific intent can be inferred from the defendant's choice of target, in this case, the United States diplomatic compound in Benghazi, Libya).

The plain language of the statute does not require the targeted government to be the federal government. The statute simply refers to the "conduct of government," indicating that all levels and forms of government are included. United States v. Thurston, 2007 WL 1500176 at *7 (D. Ore. May 21, 2007) (citing United States v. De

7

Amaris, 406 F.Supp.2d 748, 750-51 (S.D. Tex. 2005), in which the court concluded that

the word "government" as used in the statute includes foreign governments, and United

States v. Harris, 434 F.3d 767, 773 (5th Cir. 2005), cert. denied, 547 U.S. 1104 (2006),

in which the court concluded that the sentencing enhancement applied to a defendant

who caused an explosion in and set fire to a municipal building that housed the city

police department).

In the instant case, there is ample evidence for the court to conclude that the

terrorism enhancement should apply to the sentencing of defendant Ansberry for his

conviction of attempted use of a weapon of mass destruction. First, it is undisputed that

defendant Ansberry has pled guilty to a violation of 18 U.S.C. § 2332a, an offense

specifically enumerated under 18 U.S.C. § 2332b(g)(5) as a "federal crime of terrorism."

In considering whether the improvised explosive device (IED) was designed to

detonate, the Court heard extensive evidence about the components and construction

of the device. The evidence presented at the sentencing hearing demonstrated that

Ansberry created an improvised explosive device (IED), deciding to use HMTD, an

extremely volatile and unstable high explosive, as the main charge. All of the witnesses

with expertise in handling and analyzing explosive materials who testified at the

sentencing hearing recognized the danger of using HMTD in an IED. See, e.g.,

Testimony of FBI Special Agent Bomb Technician Garrett Gumbinner, RT[3] at 100, 101,

102, 104-105, 107-108, 109, 112, 140, 143-45; Testimony of FBI Chemist Forensic

Examiner Raleigh Parrott, II, RT at 154-55, 156-57, 159-60, 161-62, 163-64, 167-68,

[3.] "RT" refers to pages of the Sentencing Transcript.

171-72; Testimony of FBI Explosive Hazardous Device Examiner Travis McCrady, RT at 206, 209, 216; Testimony of Defense Expert Witness Jerry Taylor, RT at 314, 317, 319-22, 324-25, 361. Review of the image of defendant's computer revealed numerous internet searches related to explosive materials, lethal toxins, timing devices, chemical recipes for explosives, and containers for devices, such as "glass jar explosive" and "pressure cooker."   RT at 258-59, Gov. Exh. 65.

The athletic bag hiding the IED included two metal pie tins that served no purpose other than to be shrapnel upon detonation of the device. Mr. McCrady testified that the two metal pie tins were not necessary to create the device. RT at 203, 205. Detonation of the device would have propelled pieces of the pie tins outwards at high velocities. RT at 203, 205. In response to the Court's question, Mr. McCrady confirmed that he considered the pie tins and the glass Mason jars in the athletic bag to be shrapnel. RT at 226.

Significantly, the device contained a safe arm slide switch to allow Ansberry to transport it to its targeted location. According to testimony at the sentencing hearing, the slide switch was in the armed position when that component was received by the FBI Laboratory. RT at 201. He placed the IED within a few feet of the only entrance to the Nederland Police Department before dawn and then attempted to detonate the device remotely several times. Although he was unsuccessful in detonating the device, he did not remove it from the entrance to the Nederland Police Department. He did not call the Nederland Police Department or any other establishment in the shopping center to warn people that the device was there. There was no evidence presented at sentencing that

9

Ansberry intended to create a hoax device or a device solely intended to frighten passersby. In fact, in response to the Court's own question about whether it was a "hoax bomb," the defense expert witness, Jerry Taylor, stated, "[a]bsolutely not."   RT at 362.

Second, there is also overwhelming evidence that defendant Ansberry's offense was calculated to influence or affect the conduct of government or to retaliate against government conduct. His intent to influence or affect the conduct of government is self-evident and should be inferred by the fact that he placed the potentially lethal IED within several feet of the entrance to the Nederland Police Department. See, e.g, McDavid, 396 Fed. Appx. at 365; In re Terrorist Bombings of U.S. Embassies in E. Africa, 552 F.3d at 93; Mandhai, 375 F.3d at 1243; Abu Katallah, 314 F. Supp.3d at 198.

Moreover, direct evidence proves that he intended to retaliate for the killing of defendant's friend by a law enforcement officer employed in the town of Nederland 45 years earlier.[4]   In 1971, the defendant and his friend were members of a group known as the STP Family. RT at 255. After the IED was discovered and rendered safe, an STP sticker was recovered from the owner of the laundromat located next to the Nederland Police Department. That sticker had been found on the window of the laundromat. The sticker contained handwriting on it, "RIP Deputy Dawg. 7-17-71. Murdered by Town

---

[4] The standard of proof is a preponderance of the evidence. Nonetheless, the Court should find that the direct evidence of the defendant's intent to retaliate in this case compels the application of this enhancement under any conceivable standard of proof. In such situations, any due process error in the standard of proof would be harmless. See, Olsen, 519 F.3d at 1105 (affirming an enhancement that resulted in a six times multiplier of the guideline range because the record supported the enhancement under any standard of proof).

Marshal."   Two additional STP stickers were located inside defendant's luggage seized

when he was arrested. RT 248-50. According to his diary entry, defendant also visited

Nederland close to the 45th anniversary of the killing of his friend, one month before

setting the IED in front of the Nederland Police Department. The defendant wrote, "9-

17-16. Nederlands. Went to Pioneer Inn. Felt so bad sitting in the last place Deputy was

last seen alive…"   RT at 261, Gov. Exh. 64. The last two entries in the defendant's

journal read, "Nederland 16. Pioneer Inn. Life goes on. No one remember what

happened in 71. Poor Deputy. REVENGE is called for."   RT at 262, Gov. Exh. 64. The

word, "REVENGE" is written in all capital letters and is underlined three times in the

journal. Id.

Defendant's visit to Nederland before placing the IED was corroborated at the

sentencing hearing by the testimony of Kristina Bozik, a waitress at the Pioneer Inn,

who recalled serving the defendant and having a conversation with him there in August

of 2016. According to Ms. Bozik, the defendant told her that he had just gotten off the

bus, and had not been in town since 1971. When Ms. Bozik asked the defendant why

he had come to Nederland, she testified that the defendant said that "he was here to

take care of some old business."   RT at 100-01.

The evidence establishes that the defendant planned a lethal attack on the

Nederland Police Department to retaliate against law enforcement for the killing of his

friend.[5] His frame of mind was clearly evident from his diary entries. He sought

---

[5] For purposes of applying the terrorism enhancement, "it is unimportant *why* [a
defendant] wanted to retaliate against the government. All that matters is that he did, in

revenge, not against the person responsible for the killing or even anyone related to that

person. The killer himself is dead. The defendant placed his IED not at the killer's home

or his grave or near anyone related to the killer. No one employed by the Nederland

Police Department had any direct knowledge of the 1971 killing. No one currently

employed there was employed by the Nederland Police Department at the time of the

killing. Detective Darragh O'Naullian, the law enforcement officer who discovered the

IED outside the Nederland Police Station, was not even born in 1971. The logical

inference from all of the evidence presented at sentencing is that the defendant's

actions were intended to retaliate against government conduct.

Moreover, the defendant's intention to retaliate against police and public officials

generally is revealed through the internet searches found on his computer. His search

history includes research about how to harm law enforcement and public officials.

Defendant Ansberry's conduct clearly merits the application of the terrorism

enhancement. The Seventh Circuit has observed,

> Simply put, a terrorist is "any one who attempts to further his views by a
> system of coercive intimidation."   XVII *Oxford English Dictionary* 821 (2d
> ed. 1989), *accord Webster's Third New International Dictionary* 2361
> (1981) ("an advocate or practitioner of terror as a means of coercion."). . .
> The Guidelines provide a practical definition for what constitutes an act of
> terrorism, and thereby establishes a very workable definition of who is a
> terrorist. It looks at the crime involved and the perpetrator's motive. If the
> act Is among the litany of crimes listed in § 2332b(g)(5)(B), which include
> a bevy of the more harmful and odious acts in the criminal code, including
> everything from murder and torture to the destruction of government
> property, and is "calculated to influence or affect the conduct of
> government by intimidation or coercion, or to retaliate against government
> conduct," then it is a federal crime of terrorism. . . And for all intents and

fact, commit a crime calculated to retaliate against the government…."   United States v.
Van Haften, 881 F.3d 543, 545 (7th Cir. 2018) (citations omitted).

purposes at sentencing, that person is a terrorist.

United States v. Christianson, 586 F.3d 532, 538-39 (7th Cir. 2009). In the instant case, it is important to recall the words of Detective O'Naullian at the end of the sentencing hearing, as he addressed the Court and the defendant:

> You sought revenge against an agency. You are a terrorist. I came from the land of terrorism, and I cannot, inside myself, find any difference in you and the terrorists that inhabited my country for a hundred years. There is no difference, sir. They all had a misguided, a mismotivated – and it is the same thing. There is no difference between you and the terrorist. You terrorized me. You terrorized my police department. You terrorized my town. . . .

RT at 424. Here, the purpose behind defendant Ansberry's action was to seek revenge and retaliate against the Nederland Police Department. While defense counsel argued at the sentencing hearing, without any evidence because the defendant chose not to testify, that the defendant placed the IED at the entrance to the Nederland Police Department without intent to cause damage, RT at 390, the construction of the device and the chosen location for the armed device belie this statement. The government's experts who testified at sentencing concluded that the device constructed by the defendant was a bomb capable of detonating, thereby causing serious injury or death, and property damage. See generally United States v. Uzenski, 434 F.3d 690, 702 (4th Cir. 2006) (where evidence established "at the very least, that the device was capable of exploding," based on the presence of a specific igniter and switch, device is deemed to be an explosive bomb); United States v. Langan, 263 F.3d 613, 625 (6th Cir. 2001) ("[T]he government need not establish that any particular component be present for a device to qualify as a destructive device. The only requirement is that the device be

capable of exploding. . . .") (citation omitted). The Second Circuit recently considered a challenge to a conviction for using a destructive device based upon a defense assertion that the device was designed to be incomplete. United States v. Sheehan, 838 F.3d 109 (2d Cir. 2016).   The Court upheld the conviction, reasoning

> "[i]n light of the objective features of the device – which was built to look like an IED, contained an explosive, and was capable of detonating – the jury could find that the device was objectively designed as a weapon even if it was missing a component required to enable it to explode in a specific way. . . . To the extent that the lack of a fuzing system may indicate that Sheehan did not subjectively intend for the device to be capable of detonation, or did not know such detonation was possible, Sheehan's belief is irrelevant, since, when it is clear that the assembled device constitutes an explosive bomb as defined in the statute, 'intent is irrelevant….'"

838 F.3d at 120 (citations omitted).

Defense counsel further argued that the defendant placed the IED at the entrance to the Nederland Police Department "to send a message."   Id. The method that defendant Ansberry chose to send his message 45 years after the killing of his friend was not a peaceful protest nor a published statement to the population of Nederland by any means of mass communication. Instead, he chose to launch a violent attack against the Nederland Police Department and anyone else who might be at the wrong place at the wrong time at the Lakeview Drive shopping center. It is simply fortuitous that the device did not detonate as designed.

/

/

/

/

14

## **CONCLUSION**

Wherefore, the foregoing reasons, the government submits that the evidence at the sentencing hearing established by a preponderance of the evidence that the terrorism enhancement should apply in this case. Defendant Ansberry should be sentenced to 324 months imprisonment for his terrorism crime, attempted use of a weapon of mass destruction.

Respectfully submitted,

JASON R. DUNN
United States Attorney

*s/ David Tonini*
DAVID TONINI
*s/ Greg Holloway*
GREG HOLLOWAY, WSBA #28743
Assistant United States Attorneys,
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: 303-454-0100
Fax: 454-0403
E-mail: David.Tonini@usdoj.gov
E-mail: Gregory.Holloway@udsoj.gov
Attorneys for the Government

*s/Jennifer E. Levy*
JENNIFER E. LEVY, DC # 291070
Trial Attorney, Counterterrorism Section
United States Department of Justice,
National Security Division
950 Pennsylvania Ave, NW
Washington, DC 20530
Telephone: (202) 514-1092
Fax: (202) 514-8714
E-mail:  jlevy@jmd.usdoj.gov
Attorney for the Government

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of December, 2018, I electronically filed the foregoing **SUPPLEMENTAL MEMORANDUM OF THE UNITED STATES IN AID OF SENTENCING** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

**Abraham V. Hutt**
        Email: abe@rklawpc.com

**Colette Therese Tvedt**
        Email: colette@tvedtlaw.com

*s/Maureen Carle*
Legal Assistant
United States Attorney's Office
District of Colorado
1801 California Street, Suite 1600
Denver, Colorado 80202
Phone: 303-454-0256
Email: Maureen.Carle@usdoj.gov