## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Criminal Case No. 16-CR-00341-CMA**

**UNITED STATES OF AMERICA**

       **Plaintiff(s),**

v.

**DAVID ANSBERRY**

       **Defendant.**

---

### DEFENDANT'S SUPPLEMENTAL SENTENCING BRIEF

---

David Ansberry, by and through counsel, Colette Tvedt and Abraham V Hutt, respectfully submits the following supplemental brief pursuant to the Court's Order of November 1, 2018.

### I.    The Elements of the Offense of Conviction

On July 18, 2017, David Ansberry, entered a guilty plea with no plea agreement to the only Count of the Indictment, a violation of 18 U.S.C. § 2332 a(a)(2); *i.e.,* that he:

**First:** … did, without lawful authority, attempt to use an item defined in 18 U.S.C. § 2332a(c)(2), namely a destructive device, as defined by 18 U.S.C. § 921;

**Second**: … did so against property within the United States; and

**Third**: The mail or any facility of interstate or foreign commerce was used in furtherance of the offense. ECF 36. The United States agreed that these were the only elements of the crime. ECF Document 36. AUSA Holloway signed this document after specifically designating the government's agreement with these elements at page 2 of the document. (Doc. 36).

1

In contravention of that stipulation, the government now urges the Court to apply sentencing guidelines that would add an additional element, regarding a person as a victim. The government also urges the application of additional guidelines that radically increase both the applicable range of imprisonment from 24-30 months to 360 – 405 months. Application of each of the provisions urged by the government requires a factual finding including a *mens rea*. The defense here asserts that such findings would have to be made by a jury beyond a reasonable doubt, but that if the Court rules that it can make them, then they must be proven by clear and convincing evidence if not beyond a reasonable doubt.

## II.     The Applicable Sentencing Standard

The government urges the court to apply U.S.S.G. § 2K1.4(a)(1) (increasing the offense level from 20 to 24).    The defense argues that section (a)(1) of § 2K1.4 does not apply because the offense did not involve "knowingly creating a substantial risk of death or serious bodily injury," nor did the offense involve the attempted **destruction** of any facility or place of public use. Subsection (a)(2)(C) of § 2K1.4 applies because the offense endangered a place of public use. With a base level of 20, a 3-level reduction for acceptance of responsibility, and a criminal history Category I, Mr. Ansberry's guideline range is 24-30 months. Using the government's proposed four level higher base rate, the guideline range 37-46 months.

The Government, however, also proposes a 3-level increase pursuant to § 3A1.2(a), the official victim section, and a 12-level increase pursuant to § 3A1.4 terrorism increase. These increases, again applying the three-level decrease for acceptance of responsibility, place the offense level at 36, and also inflate the Criminal History Category to VI, resulting in an advisory guideline of 324-405 months.

Application of the provisions urged by the government requires several factual findings. Most importantly, to apply the enormous "terrorism" enhancement of U.S.S.G. § 3A1.4 the court must make a finding about Mr. Ansberry's state of mind at the time of the commission of the offense: namely, that he "calculated to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5). ECF 38. Application of the 3-level increase pursuant to § 3A1.2(a) for "official victim" also requires proof of Mr. Ansberry's state of mind: that he was motivated by the status of a designated victim who was a government officer or employee. USGS § 3A1.2(a). Finally, application of U.S.S.G. § 2K1.4(a)(1) rather than (a)(2)(C) requires proof that Mr. Ansberry "knowingly creat[ed] a substantial risk of death or serious bodily injury," or that the offense involved the attempted "destruction" of a state or government facility. USGS § 2K1.4(a)(1).

As set forth more fully below, Mr. Ansberry avers that the government sought enhancements, increasing the low end of the imprisonment range by 24 years and the high end by 30 years, are so radical as to require that the factual findings be made by much more than a judicial determination of a mere preponderance of the evidence.

## A. Proof Beyond A Reasonable Doubt to a Jury Should be Applied:

Mr. Ansberry asserts that the factual findings necessary to apply the Guidelines provisions urged by the government must be proven to a jury beyond a reasonable doubt based upon *U.S. v. Booker* 543 U.S. 220 (2005). His assertion is based on Justice Thomas's opinion in *Booker* and the interpretation of *Booker* set forth by Justice Scalia in his dissenting opinion in *Jones v. United States,* 135 S. Ct. 8, 8-9, 190 L. Ed. 2d 279 (2014). Mr. Ansberry concedes, however, that there is precedent directly contrary to his position. *Alleyne v. U.S.* 570 U.S. 99 (2013); *U.S. v. Ray 704 F.3d 1307* (10th Cir. 2013).

While many courts have continued to assume that a preponderance of the evidence is a sufficient evidentiary standard post- *Booker*, see, e.g. *United States v. Villareal-Amarillas*, 562 F.3d 892 (8th Cir, 2009), many jurisdictions are applying a clear and convincing evidence standard, see *United States v. Staten*, 466 F.3d 708 (9th Cir. 2006 (higher standard required where sentencing factor has an extremely disproportionate effect on the ultimate sentence). The "preponderance of the evidence" standard at sentencing is entirely a creation of the U.S. Sentencing Commission, and not of common law. Mere commentary to a policy statement at U.S.S.G. § 6A1.3 sets forth that "[t]he Commission believes that the use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case." As Justice Thomas noted in his partial concurrence (to the constitutional opinion) and dissent (to the remedial opinion) in *Booker*, there is also a due process component to the Courts' constitutional opinion:

> "the Court's holding today corrects [the Commission's] mistaken belief [that a preponderance of the evidence standard is appropriate to meet due process requirements]. The Fifth Amendment requires proof beyond a reasonable doubt, not by a preponderance of the evidence, of any fact that increases the sentence beyond what could have been lawfully imposed on the basis of facts found by the jury or admitted by the defendant."

*Booker*, 543 U.S. at 319 n.6 (Thomas, J., concurrence in part, dissent in part) (emphasis added).) Indeed, several courts across the country have recognized the inconsistency between continuing to apply evidentiary standards lower than beyond a reasonable doubt and *Booker's* constitutional mandate. Here is how now Supreme Court Justice Kavanaugh put it in a concurring opinion in a D.C. Circuit case:

> "[T]he bottom line, at least as a descriptive matter, is that the Guidelines determine the final sentence in most cases. And notwithstanding the *Booker* constitutional opinion, many key facts used to calculate the sentence are still being determined by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt. The oddity of all this is perhaps best highlighted by the fact that

courts are still using acquitted conduct to increase sentences beyond what the defendant otherwise could have received—notwithstanding that five Justices in the *Booker* constitutional opinion stated that the Constitution requires that facts used to increase a sentence beyond what the defendant otherwise could have received be proved to a jury beyond a reasonable doubt. In short, we appear to be back almost where we were pre-Booker." *United States v. Henry*, 472 F.3d 910, 920-21 (D.C. Cir. 2007, (Kavanaugh, J., concurring) (emphasis in original).

Former United States Judge and current Harvard Law Professor, Nancy Gertner, has perhaps best articulated the conundrum:

"We cannot say that facts found by the judge are only advisory, that as a result, few procedural protections are necessary and also say that the Guidelines are critically important. If the Guidelines continue to be important, if facts the Guidelines make significant continue to be extremely relevant, then *Due Process requires procedural safeguards and a heightened standard of proof, namely, proof beyond a reasonable doubt.* (*United States v. Pimental*, 367 F. Supp. 2d 143, 154 (D. Mass. 2005) (emphasis added).)

In *Jones v. United States*, 135 S. Ct, 8 (2014), Justice Scalia, with whom Justice Thomas and Justice Ginsberg joined, dissented from denial of *certiorari* in a case in which the sentencing judge-imposed sentences that were many times longer than those the Guidelines would otherwise have recommended based on facts that were not considered by the jury at trial.

"Petitioners present a strong case that, but for the judge's finding of fact, their sentences would have been "substantively unreasonable" and therefore illegal. See *Rita v. United States,* 551 U.S. 338, 372, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007) (SCALIA, J., joined by THOMAS, J., concurring in part and concurring in judgment). If so, their constitutional rights were violated. The Sixth Amendment, together with the Fifth Amendment's Due Process Clause, "requires that each element of a crime" be either admitted by the defendant, or "proved to the jury beyond a reasonable doubt." *Alleyne v. United States,* 570 U.S. ——, ——, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013). Any fact that increases the penalty to which a defendant is exposed constitutes an element of a crime, *Apprendi v. New Jersey,* 530 U.S. 466, 483, n. 10, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and "must be found by a jury, not a judge," *Cunningham v. California,* 549 U.S. 270, 281, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007).[*] We have held that a substantively unreasonable penalty is illegal and must be set aside. *Gall v. United States,* 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). It unavoidably follows that any fact necessary to prevent a sentence from being substantively unreasonable—

thereby exposing the defendant to the longer sentence—is an element that must be either admitted by the defendant or found by the jury. It *may not* be found by a judge." *Jones,* 135 S. Ct. at 9 (2014).

Mr. Ansberry asserts that in order to follow the constitutional mandates of *Booker* the government must prove sentencing factors, especially those involving a his mental state, beyond a reasonable doubt to a jury. Even if they are only proven to a judge, there is no good reason to abandon the constitutional requirement of proof beyond a reasonable doubt. These arguments hold true even where there is a guilty plea and not a trial.

When a defendant pleads guilty, he or she, of course, forgoes not only a fair trial, but also other accompanying constitutional guarantees. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). A waiver of the right to a trial by a jury, however, does not equate to a waiver of the right to have the government prove its case beyond a reasonable doubt. *See* Id. (stating that pleading guilty implicates the Fifth Amendment privilege against self-incrimination, the Sixth Amendment right to confront one's accusers, and the Sixth Amendment right to trial by jury with no mention of the burden of proof). (*United States v. Huerta-Rodriguez*, 355 F. Supp. 2d 1019, 1027 (D. Neb. 2005) (emphasis added).) Mr. Ansberry's case illustrates just how critical this is. He accepted responsibility and pled guilty to the only crime with which he was charged. Having done so, however, he is suddenly faced with the government seeking to prove facts, never previously alleged, and by a mere preponderance of evidence, with the aim to increase his prison sentence by a factor of more than ten times.

The Tenth Circuit has also considered this problem but not definitively ruled upon it. *United States v. Sabillon-Uman*, 772 F.3d 1328 (204), an opinion authored by then- Judge Gorsuch, involved a case in which the Judge in a drug conspiracy case stated at the beginning of the sentencing that the defendant was "but a bit player in a larger drug operation." The judge said

that a base level 32 "sounded about right" and then asked the probation officer to offer some

justification for that number. The probation officer then stated (without a factual basis) that the

defendant was responsible for 1.5 kilograms of cocaine and 1.5 kilograms of heroin for a total of

3 kilograms sold to the greater conspiracy. An incorrect calculation[1] by the probation officer and

adopted by the court increased the sentence by two years.  Judge Gorsuch laid out the proper

sequencing of events when sentencing a defendant.

> "Put simply, the court is supposed to start with the facts, then consult empirics about
> similarly situated defendants and the expertise of the Sentencing Commission, and
> only then make an individualized judgement about the case at hand informed by
> that information… We admit the proper order of operations we've outlined rests in
> part on a questionable foundation. It assumes that a district judge may either
> decrease or increase a defendant's sentence (within the statutorily authorized range)
> based on facts the judge finds without the aid of a jury or the defendant's consent.
> ***It is far from certain whether the Constitution allows at least the second half of
> that equation***. (emphasis added). *See, e.g., Jones v. United States,* —— U.S. ——,
> 135 S.Ct. 8, 190 L.Ed.2d 279 (2014) (Scalia, J., dissenting from denial of
> certiorari).

United States v. Sabillon-Umana, 772 F.3d1328, 1331 (10th Cir. 2014). Applying the principles in

*Jones* to the instant case,  the application of the victim enhancement (3-level increase) and the

terrorism enhancement (an additional 12-level increase, plus an increase to Category VI Criminal

History) will lead to what otherwise would be a substantively unreasonable sentence. Only because

of the fact-finding involved, allowing the application of the enhancements, could the radically

increased sentence survive an unreasonableness challenge. Consequently, the Court alone may not

be tasked with making the requisite factual findings. Such facts should be found by a jury, beyond

a reasonable doubt.

### B. In cases where the Government's Proposed Enhancements Disproportionately Impact the Sentencing Guidelines Sentence, those Factors should Found by Clear and Convincing Evidence

---

[1] Under the correct analysis, the defendant was eligible for a base level of 30, not 32, and accordingly a lower advisory guidelines sentence. *United States v Sabillon-Uman* at 1331.

The terrorism enhancement, Section 3A1.4 would not only increase Mr. Ansberry's offense level by 15 levels, it would artificially inflate his criminal history category from I to VI.  The only remotely comparable enhancement is the career offender guideline, *See* U.S.S.G. §4B1.1 which would only apply to a Category I person with a very significant but very old record. Finding the existence of old prior convictions in that circumstance is wildly different than the factual findings the government is asking the court to make here. In this case, each of the proposed enhancements requires a determination about Mr. Ansberry's state of mind.  Mr. Ansberry asserts based on the authority discussed below that assuming *arguendo* that the court is authorized to make these findings they must be made beyond a reasonable doubt, or at least by clear and convincing evidence.

The U.S. Supreme Court has recognized, and never foreclosed, the possibility that certain relevant conduct would need to be proven by clear and convincing evidence, where such conduct "would dramatically increase the sentence." *Kinder v. United States*, 504 U.S. 946, 948 (1992) (White, J., dissenting from denial of certiorari) (citing circuit precedent therein); *see also McMillan v. Pennsylvania*, 477 U.S. 78, 88 (1986) (upholding preponderance standard in the case, but not resolving question of whether a higher standing applies where a sentencing enhancement is "a tail which wags the dog of the substantive offense"), *overruled on other grounds, Alleyne v. United States*, 133 S.Ct. 2151 (2013). *Kinder* recognized that "at least one Circuit has held, *United States v. Kikumura,* 918 F.2d 1084, 1098-1102 (CA3 1990), and two have suggested, *United States  v. Townley,* 929 F.2d 365, 369-370 (CA8 1991); United States  *v. Restrepo,* 946 F.2d 654, 661, n. 12 (CA9 1991) (en banc), cert. denied, 503 U.S. 961, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992); *Restrepo,* 946 F.2d, at 661-663 (Tang, J., concurring), *id.,* at 664-679 (Norris, J., dissenting), that a clear-and-convincing-evidence standard is appropriate when the relevant conduct offered at

sentencing would dramatically increase the sentence. Cf. *id.,* at 663-664 (Pregerson, J., dissenting)

(advocating beyond-reasonable- doubt standard). As Justice White articulated in *Kinder*:

> "The burden of proof at sentencing proceedings is an issue of daily importance to the district courts, with implications for all sentencing findings, whether they be the base level offense level, specific offense characteristics, or any adjustments thereto, of even to those facts found to warrant departure all together. The resolution of disputed matters at sentencing obviously has serious implications for both the defendant and the Government, as it controls the length of sentence actually to be imposed." *United States v. Kinder*, 504 U.S. 946 at 949.

The Ninth Circuit has required the clear and convincing standard in cases with significantly

less dramatic enhancements cases than Mr. Ansberry's. In *United States v. Hymas*, 780 F.3d 1285,

1290 (9th Cir. 2015) the Court said, "the higher clear and convincing standard for finding facts at

sentencing may apply when a sentencing factor has an extremely disproportionate effect on the

sentence relative to the offense of conviction." Under the *United States v. Valensia,* 222 F.3d 1173

(2000) totality of the circumstances test, six factors, none of which is dispositive, guide the

determination of whether a sentencing factor has a disproportionate impact on the sentence, such

that a heightened clear and convincing standard of proof, rather than preponderance of the evidence

standard, applies when finding facts at sentencing: (1) whether the enhanced sentence falls within

the maximum sentence for the crime alleged in the indictment; (2) whether the enhanced sentence

negates the presumption of innocence or the prosecution's burden of proof for the crime alleged

in the indictment; (3) whether the facts offered in support of the enhancement create new offenses

requiring separate punishment; (4) whether the increase in sentence is based on the extent of a

conspiracy; (5) whether an increase in the number of offense levels is less than or equal to four;

and (6) whether the length of the enhanced sentence more than doubles the length of the sentence

authorized by the initial sentencing guideline range in a case where the defendant would otherwise

have received a relatively short sentence.  U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A. See *United States*

*v Hymas* at 1290.

Several of the *Hymas* factors clearly apply to Mr. Ansberry's case. Under factor 3 (whether the facts offered in support of the enhancement create new offenses requiring separate punishment), the Government is asking the Court to apply §3A1.2(a) *Official Victim enhancement*, contrary to the elements in the guilty plea. Specifically, Mr. Ansberry plead to the attempted use of a destructive device against property only and not any person. Document 36.

Clearly factor number 5 applies here (whether an increase in the number of offense levels is less than or equal to four). The terrorism enhancement is twelve levels and the base level sought by the government, § 2K1.4(a)(1) is 4 higher than that asserted by the defense, § 2K1.4(a)(2)(C). Combined with the "official victim" enhancement (3 levels) the total proposed increase is 19 levels.

Factor number 6 (whether the length of the enhanced sentence more than doubles the length of the sentence authorized by the initial sentencing guideline range in a case where the defendant would otherwise have received a relatively short sentence) also clearly applies to Mr. Ansberry. His guidelines are increased over 10 times giving Mr. Ansberry, a 67-year-old man with *osteogenesis imperfecta*, a sentence requiring him to die in federal prison.

The Ninth Circuit has required the use of the clear and convincing standard in a variety of situations which are legally analogous to Mr. Ansberry's. For example, In *United States v. Munoz*, the Ninth Circuit held that the district court was required to use the clear and convincing standard when calculating losses from uncharged conduct. 233 F.3d 1117, 1127 (9th Cir. 2000). Applied the higher standard and *superseded on other grounds by statute as stated in United States v. Van Alstyne,* 584 F.3d 803, 817–18 (9th Cir.2009). The district court, applying a preponderance of evidence standard, included within the loss calculation the losses from hundreds of sales made to

10

other investors not included in the two counts of conviction. *Id.* at 1124. The Court vacated the sentence and remanded for resentencing, holding that, while the sales to the other investors were relevant conduct, the heightened standard of proof should have been used because the enhancement had a "disproportionate effect on the sentence. " *Id.* at 1127.  In *United States v. Mezas De Jesus*, 217 F.3d 638 (2000) the defendant's sentence was enhanced nine levels on the basis of an uncharged kidnapping. As a result, his sentencing range increased from 21-27 months to 57-71 months.  Although De Jesus was sentenced at the low end, he went from a relatively short sentence of less than 2 years to nearly five years.  The government conceded on appeal that the "impact of Mezas de Jesus's sentence of the uncharged kidnapping may be reasonably viewed as similar to the impact of the acquitted conduct in *Hopper*." In *United States v. Hopper*, 177 F.3d 824, 833 (9th Cir. 1999) the Court held that where a sentencing factor has an extremely disproportionate effect on the sentence…the government must prove such a sentencing factor by "clear and convincing" evidence. *Hopper*, 177 F.3d at 833.

Another example is *United States v. Thurston*, No. CR 06-60069-01-AA, (D. Or. May 21, 2007) not reported in F. Supp 2d; available at 2007 WL 1500176, aff'd sub nom. *United States v. Tubbs,* 290 F. App'x 66 (9th Cir. 2008), where the Court stated that the clear and convincing standard in applying the "terrorism" enhancement in part because of the radically higher guidelines range that would result.  The court stated:

> "…Finally, the increase in offense level is greater than four, and the enhancement more than doubles the length of the sentence authorized by the initial sentencing guideline range for all defendants. These factors alone warrant a higher burden of proof. Thus, the government must present clear and convincing evidence that defendants' offenses of conviction involved or were intended to promote "federal crimes of terrorism" as defined under § 2332b (g)(5)(B)." *United States v. Thurston*, 2007 WL 1500176 (D.Or. May 21, 2007).

In *Thurston*, the defendants and other individuals formed a conspiracy to damage or destroy private and government property. Specifically, defendants conspired to commit a series of arson and other offenses on behalf of the Animal Liberation Front (ALF) and the Earth Liberation Front (ELF). The conspirators targeted federal government agencies and private parties they believed responsible for degradation of the environment, tree harvesting, and cruel treatment of animals. Eventually, the targets of arson expanded to include entities involved in genetic research. The group also formed "cells" or groups that planned to carry out each arson. These arsons and attempted arsons were conducted across 5 states. After each arson the conspirators would send "communiques" attributing their responsibility for the act. The government sought to impose the terrorism enhancement under §3A1.4 with the 12-level enhancement and an increase in the criminal history category to VI. The court stated that the definition of "federal crime of terrorism" explicitly requires an intent to "influence or affect the *conduct of government* by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C.§2332b(g)(5)(A) (emphasis added). Id. The court also found that the motivational element:

> "Defendants argue that the government cannot establish the necessary motivational element to support the terrorism enhancement, because their offenses were calculated merely to gain and generate publicity rather than to influence, affect, or retaliate against government conduct. Additionally, with respect to the arson of private property, defendants maintain that they targeted those businesses with the intent to influence or affect the conduct of private parties rather than the conduct of government. Finally, defendants argue that the government cannot rely on the victims' association or relationship with government entities to impute a particular motivation for the offenses to defendants. The government responds that the court must look at the totality of the circumstances surrounding each arson to determine whether each offense was calculated to influence, affect, or retaliate against government conduct. As stated during argument, the court cannot determine conclusively whether the offenses were intended to influence, affect, or retaliate against government conduct until relevant evidence is presented at the defendants' sentencing hearings. At the same time, defendants point is well taken; the definition of "federal crime of terrorism" explicitly requires an intent "to influence or affect the *conduct of government* by intimidation or coercion, or to retaliate against

*government conduct.*" 18 U.S.C. § 2332b(g)(5)(A) (emphasis added). Thus, the government must establish that the defendants targeted government conduct rather than the conduct of private individuals or corporations." *United States v. Thurston*, 2007 WL 1500176 (D.Or. May 21, 2007).

The *Thurston* Court also acknowledged that to the extent that the defendants' offenses are not typical "terrorist" activities, the court has discretion to depart downward "[w]hen a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm." *Thurston*, footnote 3. See *Koon v. United States*, 518 U.S. 81, 93 (1996) (quoting U.S.S.G. ch. 1, pt. A, intro. Comment. 4(b)). In *Koon,* the court stated:

> "Turning our attention, as instructed, to the Guidelines Manual, we learn that the Commission did not adequately take into account cases that are, for one reason or another, "unusual." 1995 U.S.S.G. ch. 1, pt. A, intro. comment. 4(b). The Introduction to the Guidelines explains: "The Commission intends the sentencing courts to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." *Ibid.*

Similarly, in this case, Mr. Ansberry's actions were not "typical terrorist" actions. He was not involved in an effort to influence, affect, or retaliate against government conduct. Instead, his offense was motivated to remind people of the murder of Guy Goughner by Renner Forbes, an extra-governmental action.

The Tenth Circuit has been considering the heightened standard proof of evidence in cases involving radical increases of sentences at the sentencing hearing. In an unpublished decision, *United States v. Redifer*, 631 Fed.Appx. 548 (2015), the court reviewed the history of deferring a definitive ruling on the heightened standard of proof at sentencing:

> Although we have left open the possibility that extraordinary circumstances might justify the use of a more demanding standard at sentencing than a preponderance of the evidence, we have never applied such an enhanced standard of proof. *See, e.g. ,United States  v. Olsen,* 519 F.3d 1096, 1105 (10th Cir.2008) ("[O]ur circuit has never adopted the clear and convincing standard in so-called disproportionate

13

impact cases," but "we have reserved the question of whether, in some extraordinary or dramatic case, due process might require a higher standard of proof"); *United States v. Smith,* 208 F.3d 1187, 1189 (10th Cir.2000) (assuming "that a heightened burden of proof might be appropriate in cases of extraordinary upward adjustments in sentences," but finding no extraordinary circumstances justifying such a standard under circumstances of case); *United States v. Washington,* 11 F.3d 1510, 1516 (10th Cir.1993) (recognizing "the strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof," but applying preponderance standard to drug-quantity issue). *But see United States v. Constantine,* 263 F.3d 1122, 1125 n. 2 (10th Cir.2001) (stating that binding precedent forecloses any argument for higher standard for burden of proof in this circuit); *United States v. Valdez,* 225 F.3d 1137, 1143 n. 2 (10th Cir.2000) (same).

631 Fed. Appx. 548, 563 (10th Cir. 2015). Mr. Ansberry submits that his case presents the extraordinary and dramatic circumstances a heightened burden of proof. The need for that heightened burden is even more significant because the increases here are all based on determinations about Mr. Ansberry's state of mind, precisely the kind of determinations that are normally made beyond a reasonable doubt or admitted by the defendant as an element of the offense in a guilty plea.

**III.   The evidence does not support the requisite factual findings to apply the terrorism or official victim enhancements, or the base offense level urged by the government.**

As discussed above, the government urges the court to apply 3 different U.S.S.G guidelines each of which requires a factual finding. A brief analysis of the evidence relevant to each of these factual findings follows.

**A. The government has not proven that Mr. Ansberry knowingly created a substantial risk of death or serious bodily injury.**

First, the government asserts that the proper base level for the offense is 24 under U.S.S.G. § 2K1.4(a)(1) rather than 20, under § 2K1.4(a)(2)(C). That guideline can only apply if it has been proven that Mr. Ansberry "knowingly creat[ed] a substantial risk of death or serious bodily injury" or that the offense involved "the attempted destruction of … a state or government facility… or a

place of public use." The most critical factor here is the unrebutted evidence that the explosive device could not have detonated and consequently there was no substantial risk of death or serious bodily injury. It is undisputed that the device was designed to explode when a signal reached the cell phone inside it, that numerous signals reached the cell phone and that it did not explode. It is further undisputed that in order for the device to function as designed, the lightbulb inside of it would have to have been modified or broken to expose the filaments to the powder in the mason jar; and that the light bulb was intact.

The second critical factor is that the evidence is undisputed that the device could not have gone off accidentally. This was proven by how the device responded to its treatment by the bomb squad. The agents and their robots dropped and dragged the device and subjected it repeatedly to shock, static electricity, heat and laser radiation, all of which they testified (and which their official manuals claim) should have set off the chemical HMTD which they argue was inside, and none of which did set it off. After many hours the only thing they could get to make it go off was firing a very high energy slug into it. Having subjected the device to much more than could ever have happened to it as it sat by the No Parking signs or inside the foyer of the police station and seen that it could not detonate, all of the evidence is consistent with the expert Jerry Taylor's conclusion that the device could not have functioned. Indeed, no government witness, expert or otherwise testified that it could have.

Characterizing as "fortuitous" the impossibility of the device exploding, either accidentally or as designed, does not change the fact that the laws of physics prevented it from going off and therefore it did not create a substantial risk of death or serious bodily injury to anyone. Unlike the underlying crime, the guideline does not make the *attempt* to create a substantial risk sufficient. The Sentencing Commission could quite easily have included "attempt" language in the guideline,

but it did not.   It is a well-established law of statutory construction that, absent ambiguity or irrational result, the literal language of a statute controls. *Edwards v. Valdez*, 789 F.2d 1477, 1481 (10th Cir. 1986) By the plain meaning of the words of the guideline, its use is limited to cases where the government has proven that the substantial risk of death or serious bodily injury was actually created. No such risk has been proven here.

**B.   The government has not proven an attempt to destroy a state or government facility or place of public use.**

The alternative method for the government to show that § 2K1.4(a)(1) applies is to prove an attempt to "destroy a state or government facility…or place of public use." All of the evidence is that the device did not have the potential to do any structural damage to the building it was near, let alone "destroy" it.  The best evidence of this is the lack of damage caused when the bomb squad finally exploded the device by firing a high energy slug into it and the squad agent's statement: "Aw, it didn't even damage the concrete."

All of the evidence presented about this device was consistent with the expert Jerry Taylor's conclusion that the device was incapable of doing any structural damage to the building, even if it had somehow managed to go off, despite the laws of physics.

**C.   The government has not proven that that Mr. Ansberry was motivated to victimize any government officer or employee.**

The government asks the court to apply U.S.S.G. § 3A1.2(a) which requires proof that Mr. Ansberry was motivated by an interest in harming a designated victim who was a government officer or employee.  To begin, as argued both at the sentencing hearing and *infra* in this brief, Mr. Ansberry cannot be sentenced for committing a crime against such a victim when the word "person" was specifically excised from the elements of the crime he pled guilty to, in favor only of the word "property."

Even if the court could constitutionally consider a victim, the government would have to prove that Mr. Ansberry's motivation in committing the offense was to harm that particular victim. There is simply no evidence before the court to support that claim. All of the evidence is to the contrary: he placed the device outside an empty building, he designed it to be operated not on a timer but by remote control as he watched with binoculars from across the street, his effort to explode it happened only when he could see that no one was present. The government presented the testimony of former Detective O'Naullain, who arrived at the scene of the crime two hours after the last attempt to explode the device. There is no evidence in the record of any motivation on the part of Mr. Ansberry to harm Mr. O'Naullain, let alone proof beyond a reasonable doubt or clear and convincing evidence of such motivation.

### D. The government has not proven that Mr. Ansberry calculated to retaliate against government conduct.

The government seeks to prove that the massive sentence enhancement for "terrorism" defined in U.S.S.G. §3A1.4 and 18 U.S.C. §2332b(g)(5) applies. To do so requires proof that the offense was calculated to retaliate against government conduct. The government cannot prove that as a matter of law here because to do so would mean proving that the murder of Guy Goughner by Renner Forbes was government conduct. Proving terrorism under §2332b(g)(5) requires proof that it was government conduct being retaliated for. The government however concedes that the murder of Guy Goughnor was not government conduct.

Finally, the government has not proven the necessary "calculated" *mens rea* for terrorism. The Merriam-Webster dictionary defines "calculated," as used in 18 U.S.C. §2332b(g)(5), to mean "planned or contrived to accomplish a purpose; deliberate, intended." These are classic words of *mens rea*. The government has not proven what Mr. Ansberry's state of mind was at the time of the commission of the offense.

The government correctly draws the connection between the offense and the murder of Guy Goughner by Renner Forbes some 45 years ago. It then very incorrectly, and without proof, leaps to the conclusion that on October 11, 2015 Mr. Ansberry specifically intended a "retaliation" against the government for that crime. As the defense has argued in Doc. 60, at pp.28-30, the plain meaning of "retaliation" "…requires the infliction upon a wrongdoer of **the same injury which he has caused to another."** See Black's Law Dictionary; Merriam-Webster online dictionary. Thus, a calculation to retaliate for a killing necessitates a killing or at least an attempted killing. No such retaliation has been proven.

As with any statutory interpretation, the court must presume that the legislature chose its words and their clear meaning purposefully. See, *Edwards v. Valdez*, 789 F.2d 1477 (10th Cir. 1986). The terrorism guideline and statute could easily have been written to apply to crimes that were calculated to be a "response to," or "in reaction to," or even "as a comment upon" government conduct. Congress did not choose to include any of those words, nor any similar words. Instead, the it chose the word "retaliate," and its specific meaning of causing the same kind of pain on the perpetrator that was suffered by the victim.

The only evidence advanced by government to attempt to prove that Mr. Ansberry held a specific intent to retaliate on October 11, 2015, was a journal in Mr. Ansberry's property containing a single use of the word "revenge." There was, however, no evidence presented that the word had been written by Mr. Ansberry or that any investigation had been done to determine if it was written by him. Reporter's Transcript (Sentencing Hearing - Day 2) p. 265. There was also no proof that the writing happened at any time near the time of the offense, although it was very clear that the diary contained entries from dates going back as far as 1968 and 1979. Reporter's Transcript (Sentencing Hearing - Day 2), pp.263-265. Precisely that sort of evidence is necessary

18

where the government seeks to prove a *mens rea* that results in a radical enhancement of the sentence.  In fact, the testimony was that the entry using that word appeared in the beginning part of the journal (Transcript pp. 263, line 24 to 264 line 3), not its end.

The government also called, Kristian Bozik, a waitress from the Pioneer Inn in Nederland, who testified that Mr. Ansberry came into the restaurant in the middle of August 2016 and said he was "here to take care of some old business." (Sentencing Hearing- Day 2) page 181. This evidence does not support the 12-level terrorism enhancement.

**CONCLUSION**

Mr. Ansberry asserts that the correct advisory guidelines range for his sentence is 24-30 months.  The government requests the court to raise that range by a factor of more than 10 based on the application of three sentencing guidelines, all of which require proof of facts and a *mens rea*.  Because of the nature of the asserted facts and the extreme effect they would have on his sentence Mr. Ansberry asserts in the alternative that they have to be proven beyond a reasonable doubt to a jury, by that same standard to the court or by no less than clear and convincing evidence. Finally, he argues that the facts presented do not meet any applicable burden of proof.

Dated this 20th day of December 2018.

s/ Abraham V Hutt
Recht Kornfeld
Abraham V Hutt, 14137
1600 Stout Street, Suite 1400
Denver, Colorado   80202
(303) 573-1900
abe@rklawpc.com

*s/ Colette Tvedt*
Colette Tvedt, #49751
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 577-1633, (303) 446-9400 (fax)
colette@tvedtlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of December, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the Court and the United States Attorney's Office.


*s/ Leni Charles*
Leni Charles